UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDREW MACLACHLAN,

        Plaintiff,

v.

NIKKI MONROE et al.,

        Defendants.
_____/

Case No. 1:23-cv-1141

Honorable Jane M. Beckering

## OPINION

This is a civil rights action pursuant to 42 U.S.C. § 1983 that has been filed by attorney Angelle M. Rothis on behalf of former state prisoner Andrew MacLachlan ("Plaintiff"). Counsel paid the full filing fee on Plaintiff's behalf. In an order (ECF No. 4) entered on November 8, 2023, the Court referred the case to the *Pro Se* Prisoner Civil Rights Litigation Early Mediation Program and stayed the case for any purpose other than mediation.

**I.**    **Removal from the Prisoner Early Mediation Program**

The order staying proceedings pending mediation contemplates that counsel for the defendants—typically the Michigan Department of Attorney General representing employees of the Michigan Department of Corrections (MDOC)—will enter a limited appearance for purposes of the early mediation process. Where one or more defendants is not an employee of the Michigan Department of Corrections (MDOC), however, effecting notice of the early mediation opportunity proves to be more difficult and is not always possible.

Defendants Parish, Bellanger, Monroe, and Briske are, apparently, employees of the MDOC. Counsel has entered a limited appearance on their behalf. Other counsel has entered a

limited appearance on behalf of Defendant Luce. Defendants Crompton and Unknown Parties #1 and #2, on the other hand, are not employees of the MDOC. A review of the docket indicates that, to date, no attorney has entered a limited appearance for Defendants Crompton and Unknown Parties #1 and #2. The Court cannot conduct a complete mediation in this case where no counsel has appeared for Defendants Crompton and Unknown Parties #1 and #2. The protocol governing the early mediation program does not contemplate partial settlements. Thus, the Court cannot proceed with mediation under the early mediation protocol.

Moreover, Plaintiff was paroled on February 8, 2024. MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=844474 (last visited Feb. 27, 2024). The protocol for the early mediation similarly does not contemplate mediation for prisoners who have been released on parole. Accordingly, the Court will remove this case from mediation and lift the stay that was entered to facilitate mediation. The Court advises the parties and counsel that removal from the early mediation program does not preclude pursuing an early settlement by other means, such as a settlement conference.

## II.    Preliminary Review of Plaintiff's Complaint

Accordingly, this matter is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Although Plaintiff is represented by counsel, the Court is still "required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners." *McGore v. Wrigglesworth*,

2

114 F.3d 601, 608 (6th Cir. 1997), *overruled in other part by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). At this stage of the proceedings, the Court accepts Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendant Parish for failure to state a claim. Plaintiff's Eighth Amendment claims against Defendants Monroe, Crompton, Briske, Luce, Bellanger, and Unknown Parties #1 and #2 remain in the case.

### A. Procedural Background and Current Allegations

The events of which Plaintiff complains occurred during his incarceration at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. This is not the first complaint Plaintiff has filed regarding events that occurred on July 30, 2020. The Court, therefore, provides relevant procedural background below.

#### 1. Procedural Background

In 2021, Plaintiff filed a *pro se* complaint against the MDOC, as well as numerous MDOC employees at both ECF and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Compl., *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. June 7, 2021), (ECF No. 1). Plaintiff subsequently filed an amended complaint. Am. Compl., *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Nov. 24, 2021), (ECF No. 10). In the amended complaint, Plaintiff alleged that the MCF Emergency Response Team (ERT) used excessive force against him on July 30, 2020. *Id.*, (ECF No. 10, PageID.291–94). Plaintiff was then transferred to ECF. The remainder of his complaint concerned conduct at ECF. Primarily, Plaintiff alleged that ECF staff denied him medical treatment for the injuries he received during the use of excessive force and for pre-existing health conditions, including respiratory issues.

In an opinion and order entered on January 7, 2022, the Court screened Plaintiff's complaint pursuant to the PLRA. Op. & Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich.

3

Jan. 1, 2022), (ECF Nos. 11 & 12). First, the Court concluded that Plaintiff had misjoined the ECF Defendants—Defendants Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske—and dismissed Plaintiff's claims against them without prejudice to his right to raise those claims in a new complaint. *See MacLachlan v. Burt*, No. 1:21-cv-461, 2022 WL 71768, at *3–6 (W.D. Mich. Jan. 7, 2022). The Court next found that Plaintiff had failed to set forth plausible supervisory claims against Defendants Washington, Burt, and Steward premised upon his claims that they "supervised MCF personnel and that they denied his grievances." *Id.* at *7. Additionally, the Court concluded that Plaintiff had set forth plausible Eighth Amendment excessive force claims against Defendants Kludy and Unknown Parties, and dismissed his Eighth Amendment claims against Defendants Hill, West, Brown, Miller, Hayes, and Betts. *Id.* at *8. Finally, the Court dismissed Plaintiff's Fourteenth Amendment due process claims premised upon the deprivation of his property. *Id.* at *9.

Following entry of the opinion and order, the Court stayed proceedings and referred the matter to the early mediation program. Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Jan. 7, 2022), (ECF No. 13). The case did not settle and was removed from mediation. *See* Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. May 11, 2022), (ECF No. 19). Defendant Kludy filed a motion for summary judgment on December 29, 2022. Mot. for Summ. J., *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Dec. 29, 2022), (ECF No. 23). Attorney Rothis subsequently filed an appearance on behalf of Plaintiff. On August 31, 2023, Magistrate Judge Kent issued a Report and Recommendation (R&R) in which he recommended that the motion for summary judgment be granted. *MacLachlan v. Burt*, No. 1:21-cv-461, 2023 WL 6131016 (W.D. Mich. Aug. 31, 2023). On September 19, 2023, Judge Maloney entered an order adopting the R&R

and terminating the action. *MacLachlan v. Burt*, No. 1:21-cv-461, 2023 WL 6123266 (W.D. Mich. Sept. 19, 2023).

## 2. Factual Allegations

In the instant complaint, Plaintiff sues the following ECF personnel: Warden Les Parish and medical providers Nikki Monroe, Dr. Robert Crompton, Addie Briske, Sarah Luce, Jack Bellanger, and Unknown Parties #1 and #2, both of whom are referred to as "unknown medical worker[s] for MDOC." (ECF No. 1, PageID.6.)

Plaintiff's allegations begin on July 29, 2020, when Plaintiff was incarcerated at MCF. He alleges that on that date, inmates at MCF "were getting frustrated because they believed new COVID positive patients were being transferred into their facility[,] which was COVID free." (*Id.*) The next morning, the MCF administration made prisoners carry bunk beds into Plaintiff's housing unit, "indicating that new prisoners were being brought to the unit who were not COVID tested." (*Id.*, PageID.7.) "The prisoners gathered and demanded answers but none were forthcoming so disorganization began and chaos ensued." (*Id.*) Staff then sprayed tear gas into the crowd of inmates. (*Id.*)

Plaintiff returned to his cell at around 3:00 p.m. and left the cell door open. (*Id.*) He heard a noise, looked out, and saw the Emergency Response Team (ERT) entering the unit, so Plaintiff shut the cell door. (*Id.*) The ERT charged Plaintiff's cell "and told him he was charged with inciting a riot and he was being transferred out of the facility." (*Id.*) The ERT yelled at Plaintiff "to get on the ground and put his hands behind his head and put his knees on the ground and face away." (*Id.*, PageID.8.) Plaintiff did not resist. (*Id.*) The ERT, however, "slammed the Plaintiff's face to the floor[,] pushing his face violently to the floor." (*Id.*) Plaintiff could not break his fall, and the left side of his face hit the tile. (*Id.*) Plaintiff "heard a crack, and was in immediate pain." (*Id.*) The ERT grabbed Plaintiff by the back of his neck, choking him, and one of the team members put a

5

knee in Plaintiff's back. (*Id.*) He was then hit with a riot shield in the shoulder and face, and was also punched in the face. (*Id.*) The ERT "bent [Plaintiff] over parallel with the floor holding his hands behind him, and violently extracted him from his cell and forced him out into the transport van, without his personal belongings." (*Id.*)

Plaintiff was transferred to ECF that same day, "where he presented noticeably bloody, face was bruised, nose was broken, in pain, had trouble breathing, was wheezing, and his clothing was bloody." (*Id.*) Plaintiff asked for immediate medical treatment, but was denied by Defendants Crompton, Briske, Parish, and Bellanger. (*Id.*, PageID.8–9.) Defendants Briske, Belanger, and Crompton also refused to give Plaintiff clean clothes and bedding. (*Id.*, PageID.9–10.)

Plaintiff alleges further that he was transferred to ECF without his inhaler. (*Id.*, PageID.10.) He also claims that he was denied his three-per-day breathing treatments at ECF, despite the fact that he had received these at MCF. (*Id.*) According to Plaintiff, Defendants Briske and Crompton denied Plaintiff's medical detail "like inhalers, antibiotics, pills, nebulizer, treatment for approximately 14 days including personal asthma medication and breathing treatments for approximately 14 days." (*Id.*, PageID.10.) Plaintiff states that he is allergic to aspirin, Ibuprofen, and NSAIDS, and has suffered episodes of anaphylaxis while incarcerated. (*Id.*, PageID.10.)

According to Plaintiff, he asked Defendant Crompton for treatment for a broken nose and asthma, as well as a referral to a specialist for his nose. (*Id.*) Defendant Crompton denied such care for about 3 months. (*Id.*) Plaintiff repeatedly asked Defendants Briske and Bellanger for medical care, such as pain medications, breathing treatments, and a visit to a specialist for his nose and chronic asthma; those requests were denied for 3½ months. (*Id.*, PageID.11.) Plaintiff continued to experience symptoms and complained to Defendant Monroe, but she denied care. (*Id.*,

6

PageID.11.) Plaintiff alleges further that Defendant Briske "degraded him and humiliated him while attending to his asthma." (*Id.*)

On September 23, 2020, Defendants Crompton, Briske, and Monroe sent Plaintiff to Munson Hospital in Traverse City, Michigan, for a CT scan. (*Id.*) That scan revealed "a mild nasal septal deviation to the left, severe chronic sinusitis, right sphenoid sinus with moderate mucosal thickening with some pneumatization, diffuse enlargement related to edema of the nasal turbinate[,] and osteomata units occluded bilaterally." (*Id.*, PageID.11–12.) On October 13, 2020, Plaintiff was sent to see otolaryngologist Dr. Harry Borovik. (*Id.*, PageID.12.) Dr. Borovik examined Plaintiff and diagnosed him with chronic pansinusitis, exacerbated respiratory disease, chronic rhinosinusitis sampler triad, and chronic nasal obstruction. (*Id.*) Dr. Borovik recommended that Plaintiff "undergo immediate surgery." (*Id.*) On October 22, 2022, Dr. Borovik performed several surgical procedures on Plaintiff. (*Id.*) Plaintiff alleges that from July 30, 2020, until he received surgery on October 22, 2022, he suffered painful symptoms, including wheezing, shortness of breath, tissue in the nostrils, trouble breathing and sleeping, nasal infections, and discomfort. (*Id.*)

Plaintiff underwent an endoscopic pansinusitis debridement on November 3, 2020. (*Id.*) He had another procedure on November 24, 2020, which he believes was for the purpose of treating an infection. (*Id.*, PageID.13.)

After continuing to experience symptoms, Plaintiff was sent to otolaryngologist Dr. Craig Hoekzema in January 2022. (*Id.*) Dr. Hoekzema tried non-revision treatment, but Plaintiff's symptoms continued. (*Id.*) Thus, Dr. Hoekzema recommended that Plaintiff receive a revision surgery. (*Id.*) Plaintiff alleges, however, that the MDOC refused to allow the procedure. (*Id.*)

7

The MDOC is also denying Plaintiff allergy shots. (*Id.*) Plaintiff has a severe allergy to dogs, and the symptoms he experiences exacerbate his asthma. (*Id.*) Plaintiff has repeatedly requested transfers from ECF because of his allergies, and those requests have been denied by Defendants Briske, Luce, Crompton, Bellanger, and Unknown Parties #1 and #2. (*Id.*)

Plaintiff alleges further that he suffers skin disorders, such as tissue infection, possible MRSA, and chronic sinusitis. (*Id.*, PageID.14.) Defendant Crompton, however, did not provide care for such conditions. (*Id.*) Plaintiff alleges that from 2020 through the present, he has made continuous complaints about ongoing nasal problems to all Defendants at ECF, but that they have denied necessary medical treatment. (*Id.*)

Based on the foregoing, Plaintiff asserts that Defendants have violated his Eighth Amendment rights by demonstrating deliberate indifference to his various medical needs. Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.20.)

**B.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

8

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted *supra*, Plaintiff asserts that Defendants have violated his Eighth Amendment rights by demonstrating deliberate indifference to his various medical needs.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical

9

care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in

10

medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

11

(2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Defendant Parish

Plaintiff alleges that Defendant Parish, along with the other Defendants, denied him "necessary medical care and treatment from a known serious health condition, including chronic asthma and allergies, and for physical injuries following an assault and battery including but not

limited to a broken nose, deviated septum, headaches, breathing problems, sleeping problems, and those more fully described herein." (ECF No. 1, PageID.3.)

As an initial matter, to the extent that Plaintiff has named Parish as a Defendant because of his position as Warden, he fails to state a claim for relief. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

13

Here, Plaintiff fails to allege any facts showing that Defendant Parish encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Additionally, although Plaintiff alleges in a conclusory manner that Defendant Parish acted with deliberate indifference by denying Plaintiff medical treatment, Plaintiff fails to allege any *facts* to suggest that Defendant Parish had any personal involvement in the matter.

Furthermore, administrative or custody officials, such as Defendant Parish, who have no training or authority to supervise healthcare officials, typically cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Defendant Parish cannot be considered deliberately indifferent by deferring to any treatment decisions made by the healthcare department. Plaintiff's conclusory allegations are simply insufficient to demonstrate that Defendant Parish was personally involved in the events described in Plaintiff's complaint. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendant Parish.

**2. Defendants Monroe, Crompton, Briske, Luce, Bellanger, and Unknown Parties #1 and #2**

Plaintiff has alleged sufficient facts to state Eighth Amendment deliberate indifference claims against Defendants Monroe, Crompton, Briske, Luce, Bellanger, and Unknown Parties #1 and #2. Accordingly, those claims will remain in the case.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claim against Defendant Parish will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Monroe, Crompton, Briske, Luce, Bellanger, and Unknown Parties #1 and #2 remain in the case.

An order consistent with this opinion will be entered.

Dated: March 1, 2024

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge